CHRISTIAN TENNANT CUSTOM
HOMES OF FLORIDA, INC.,

    Plaintiff,

v.

                                  CASE NO.: 3:15-cv-00585-MCR-CJK

EBSCO GULF COAST DEVELOPMENT,
INC. and JASON COMER,

    Defendants.

---

## DEFENDANT JASON COMER'S MOTION TO DISMISS AND QUASH SERVICE, OR IN THE ALTERNATIVE MOTION FOR A MORE DEFINITE STATEMENT, AND INCORPORATED MEMORANDUM OF LAW

Defendant Jason Comer ("**Mr. Comer**"), through undersigned counsel and pursuant to Federal Rules of Civil Procedure 12(b)(5), 12(b)(6), and 12(e), moves to dismiss the Amended Complaint ("**Complaint**") filed by Plaintiff Christian Tennant Custom Homes of Florida, Inc. ("**Plaintiff**") and quash service, or in the alternative, Mr. Comer seeks a more definite statement. Mr. Comer is a former vice president of Defendant EBSCO Gulf Coast Development, Inc. ("**Founder**"). Founder is the developer of the Alys Beach community. Plaintiff is a home builder. Plaintiff filed this action in an effort to require Founder to allow Plaintiff to build homes within Alys Beach. The Complaint should be dismissed because it was not timely served upon Mr. Comer and fails to state any legal claims.

## I. PRELIMINARY STATEMENT

Alys Beach is a private community that is the result of Founder's investment of significant time and resources over a period of years. Founder purchased the raw land and developed residential and commercial properties upon it. The community is unique, with high-end homes and particular requirements for design and construction. Pursuant to the Declaration of Covenants, Conditions and Restrictions for the Neighborhood at Alys Beach, recorded at Book 2654, Page 2958 of the Official Records of Walton County ("**Declaration**"), as amended at Book 2887, Page 3029, Founder has the right to control the manner and pace of the community's construction. Among its other rights, Founder has the right to approve or disapprove builders proposed by individual lot owners. Builders like Plaintiff have no right to approval, and they are not parties to the Declaration.

Plaintiff has constructed homes in Alys Beach. Founder decided it did not want to do any further business with Plaintiff, so it informed Plaintiff that it would not approve any further construction projects within Alys Beach. Likewise, Elton Stephens (who is Mr. Comer's uncle and who also serves as a member of the board of directors of Founder) decided he did not want to do business with Plaintiff. Apparently in recognition that Plaintiff has no contract right to construct homes within Alys Beach, and that Plaintiff never had any enforceable contract to build a home for Elton Stephens, Plaintiff has asserted a hodgepodge of claims seeking to

accomplish indirectly that which it cannot accomplish directly. The Complaint against Mr. Comer should be dismissed in its entirety.

## II.   STANDARD OF REVIEW

"A party may move for dismissal under Rule 12(b)(5) for insufficient service of process." *In re Trasylol Products Liab. Litig.-MDL-1928*, No. 08-CV-81212, 2011 WL 5529934, at *4 (S.D. Fla. July 21, 2011), citing Fed.R.Civ.P. 12(b)(5). Importantly, "the plaintiff on a Rule 12(b)(5) motion bears the burden of establishing this jurisdictional defense." *Id.*, citing *Lowdon PTY Ltd. v. Westminster Ceramics, LLC,* 534 F.Supp.2d 1354, 1360 (N.D. Ga. 2008) ("The burden is on [the plaintiff] to establish the validity of service [on the defendant]").

"A motion to dismiss pursuant to Fed.R.Civ.P.12(b)(6) operates to test the sufficiency of the complaint; indeed it is designed to eliminate counts or complaints that fail to state a claim upon which relief can be granted. Under Rule 12(b)(6), the party moving for dismissal for failure to state a claim upon which relief can be granted has the burden of proving that a claim has not been stated. To prevail, the movant must show 'beyond doubt that the [claimant] can prove no set of facts in support of his claim [that] would entitle him to relief.'" *Venezia Resort, LLC v. Favret*, No. 3:07-CV-74-MCR-EMT, 2007 WL 1364342, at *2 (N.D. Fla. May 8, 2007), citing *Conley v. Gibson,* 355 U.S. 41, 45–46 (1957).

The reviewing court accepts the non-moving party's factual allegations as true and draws all reasonable inferences in the non-moving party's favor, construing the pleader's allegations liberally. *See Fuller v. Johannessen,* 76 F.3d 347, 349–50 (11th Cir. 1996). While it is true that Federal Rule of Civil Procedure 8(a)(2) requires only a short and plain statement of the claim showing that the pleader is entitled to relief, nevertheless, "[c]onclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal." *Jackson v. Bellsouth Telecommunications,* 372 F.3d 1250, 1262 (11th Cir. 2004). On a motion to dismiss, the court may consider the pleadings and all exhibits attached thereto. *See Grossman v. Nationsbank,* 225 F.3d 1228, 1231-32 (11th Cir. 2000); Fed.R.Civ.P.10(c).

The Court in *Iqbal* explained that, although a court must accept as true all of the factual allegations contained in a complaint, that requirement does not apply to legal conclusions; therefore, pleadings must include factual allegations to support the legal claims asserted. *Ashcroft v. Iqbal,* 129 S.Ct. 1937, 1949-53 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 1949, citing *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007). To survive a motion to dismiss, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 129 S.Ct. at 1949.

On a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain,* 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986).

## III.  ARGUMENT

Plaintiff's Complaint asserts three claims against Mr. Comer: (1) tortious interference with an alleged business relationship with the Stephens (Count I); (2) tortious interference with an alleged business relationship with Alys Beach lot owners (Count III); and (3) negligence (Count V).  All claims against Mr. Comer should be dismissed.

### A.    PLAINTIFF'S FAILURE TO TIMELY SERVE

Plaintiff failed to comply with Florida's 120-day deadline for original service of process.  Florida's service rule states, in relevant part:

> If service of the initial process and initial pleading is not made upon a defendant within 120 days after filing of the initial pleading directed to that defendant the court, on its own initiative after notice or on motion, shall direct that service be effected within a specified time or shall dismiss the action without prejudice or drop that defendant as a party; provided that if the plaintiff shows good cause or excusable neglect for the failure, the court shall extend the time for service for an appropriate period.

Fla.R.Civ.P. 1.070(j).  While federal procedural law applies once a case is removed (see Fed.R.Civ.P. 81(c)(1)), "federal courts in removed cases look to the law of the forum state…to determine whether service of process was perfected prior to removal." *Wallace v. Microsoft Corp.*, 596 F.3d 703, 706 (10th Cir. 2010), citing

*Freight Terminals, Inc. v. Ryder Sys., Inc.*, 461 F.2d 1046, 1052 (5th Cir. 1972); *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (the Eleventh Circuit has adopted as binding precedent all decisions of the former Fifth Circuit handed down before October 1, 1981).

Here, Plaintiff filed its Complaint on August 24, 2015 and then did nothing for nearly four months. On December 7, 2015, Plaintiff filed an Amended Complaint in the state court action. Summonses were issued by the state court to both Founder and Mr. Comer on December 8, 2015; however, Plaintiff only served Founder. EBSCO filed its Notice of Removal on December 31, 2015. Thus, the deadline for service upon Mr. Comer, which was on or about December 24, 2015, expired before this action was removed to this Court. The fact that Mr. Comer was eventually served with a summons issued by this Court (Dkt. 9) does not cure Plaintiff's failure to timely serve Mr. Comer prior to removal.

A similar factual scenario was addressed in *Kline Enterprises Inc. v. Swenson*, No. 1:11-CV-00535-BLW, 2012 WL 2060731 (D. Idaho June 6, 2012). The *Kline* plaintiff brought suit against multiple defendants in state court and it was undisputed that at least four of those defendants were not timely served. *Id.* at *1-2. The defendants removed the case and filed motions to dismiss based upon untimely service. *Id.* at *1. In opposition to the motions to dismiss, the plaintiff argued that even if it failed to meet the state law deadline for service, it was

entitled to a new 120-day service period beginning on the date of removal. *Id.* at

*2. The *Kline* court disagreed with the plaintiff:

> Under these circumstances, giving Kline a new 120–day service period beginning on the date of removal would be to hold that defendants, by removing the case, waived any state defenses they would have had in state court. But that is not the law: On removal, "the defendant may take advantage of any legitimate defense that would have been available to him or her in state court."

*Id.* at *3, citing Wright and Miller, *Federal Practice & Procedure* § 1395 at p. 558

(3d ed. 2004). "This ensures that 'removal cannot breathe life into an expired

claim.'" *Kline*, 2012 WL 2060731 at *3, citing Wright and Miller, *Federal*

*Practice & Procedure* § 3721 (4th ed. 2009). The *Kline* court further explained:

> In this case, if the defendants had a defense in the Idaho court that Kline failed to perfect service by the deadline imposed by Idaho law, the defendants have not waived that defense by removing the case to this Court. And if this Court finds that while the case was in the Idaho court, Kline failed to perfect service within the deadline imposed by Idaho law, the subsequent removal of the case cannot cure that deficiency. In other words, Kline is not entitled to a new 120–period under federal law if, while the case was in the Idaho court, Kline missed the Idaho deadline for service.

*Kline*, at *3.

This is what has occurred here—Plaintiff failed to serve Mr. Comer in the

state action, the deadline for service expired, and the case was then removed. To

the extent Plaintiff attempts to argue good cause exists for its failure to meet the

service deadline, this issue also was addressed in *Kline*. While the *Kline* plaintiff

admitted service was untimely, he provided several reasons for the untimely

service and the court considered them in determining whether good cause existed. *Id.* at 5. In rejecting the plaintiff's argument that the asserted bases of untimely service amounted to good cause, the *Kline* court stated:

> While each excuse offered by Kline does not individually merit a finding of good cause for the late service on [defendant], the case law directs the Court to consider whether they collectively add up to good cause. They do not. There is nothing about these excuses viewed together that gives them any more strength than when viewed separately. Thus, the Court finds that [defendant]'s motion to dismiss should be granted.

*Id.* at 5. The same holds true here. Given the commonality between *Kline* and this case, Plaintiff's untimely service warrants dismissal. While authority exists that dismissal for failure to timely serve is not warranted where the statute of limitations may have run (*see, e.g., Yparrea v. Twin Cities Wholesale, Inc.,* 2010 WL 1994064, *1-3 (N.D. Fla. May 17, 2010)), here, Plaintiff artfully drafted its Complaint to be devoid of any dates other than two general references to 2010 and 2011. Complaint at ¶¶8, 12. Plaintiff, apparently intentionally, referenced no dates in the Complaint that would allow the Court to determine when its claims actually accrued. Plaintiff should not be permitted to hide dates in the shadows only to bring them to light when the situation may be to its benefit.

The bottom line remains that Mr. Comer was not timely served and, regardless of whether Florida state law or federal law principles are applied, this Court has the discretion to dismiss the Complaint based upon untimely service.

*See, e.g., Powell v. Madison County Sheriff's Dept.*, 100 So. 3d 753, 755 (Fla. 1st DCA 2012) (holding trial court did not abuse its discretion by dismissing plaintiff's negligence claim based on plaintiff's failure to serve process and the initial pleading within the time specified in civil procedure rule); *Bonner v. Bellsouth Telecommunications, Inc.*, No. 3:08cv524/MCR/EMT, 2009 WL 1109248, *1 (N.D. Fla. April 23, 2009) (dismissing action for failure to satisfy Rule 4(m)'s 120-day requirement and further finding no good cause because "[u]nder these facts, which implicate no outside factor but rather only the inadvertence or negligence of counsel, plaintiffs have failed to show good cause for their failure to timely effect service"); *Florence-Salmon v. Parker*, No. 3:12cv393—MCR/EMT, 2013 WL 5313309, *1 (N.D. Fla. Sept. 23, 2013) (adopting magistrate judge's report and recommendation and ordering that *pro se* plaintiff's claims be dismissed for failure to effect timely service); *Johnson v. Sheriff of Orange County Fla.,* No. 6:10–cv–1007–Orl–31GJK, 2010 WL 2869523, at *1 (M.D. Fla. July 19, 2010), citing *Chaffin v. Jacobson*, 793 So. 2d 102, 102-104 (Fla. 2d DCA 2001) ("If a plaintiff shows good cause or excusable neglect for failure to make timely service, the court must extend the time for service…However, if neither good cause nor excusable neglect is shown, the trial court…is left to exercise its discretion").

Plaintiff did not request from the state court or this Court any extension to serve Mr. Comer. Nor has Plaintiff provided any explanation regarding why Mr. Comer was not timely served that would satisfy a finding of good cause or excusable neglect. It appears that Plaintiff chose to file the original Complaint, perhaps as a place keeper, and then intentionally did nothing for approximately four months. This action should be dismissed and the untimely service made upon Mr. Comer should be quashed.

**B.     Shotgun Pleading (All Counts)**

For reasons explained throughout this memorandum of law, the Complaint is so confusing that Mr. Comer is unable to determine for what he is being sued. The vagueness begins with the General Allegations of the Complaint, which appear in paragraphs 6 through 28 and tell a winding tale of alleged misdeeds that are contradictory in the context of seeking to state cognizable legal claims. Complaint ¶¶6-28. For instance, paragraphs 12 and 13 allege that Plaintiff was negotiating with Elton and Leslie Stephens ("**the Stephens**") for the construction of a home outside of the Alys Beach development, while paragraphs 14 and 15 allege that Founder and Mr. Comer attempted to remove Plaintiff from the Alys Beach builders list in an effort to stifle competition. Complaint ¶¶12-15. Of course, Founder prohibiting Plaintiff from constructing future homes in the Alys Beach development could not prohibit Plaintiff from constructing the Stephens' home,

which is not in the Alys Beach development. These allegations cannot support the same claims, yet they are incorporated into all Counts.

Additionally, the individual Counts include allegations that do not belong or do not make sense. For example, paragraphs 36, 52, and 67 make allegations against Mr. Comer of "intentional misconduct or gross negligence" in the context of the claims for tortious interference and negligence; such allegations are nonsensical and irrelevant. Complaint ¶¶36, 52, 67. Plaintiff seeks injunctive relief within Count III that would permit Plaintiff "to enter into building contracts within Alys Beach." Complaint ¶53; *see also* Complaint ¶¶61, 84, 92. The passing references to injunctive and equitable relief make no sense. If Plaintiff wants to include claims for injunctive or some other form of equitable relief, then it should plead the elements of such claims. *See, e.g., Thomas v. Bryant*, 614 F.3d 1288, 1317 (11th Cir. 2010) ("To obtain a permanent injunction, a party must show: (1) that he has prevailed in establishing the violation of the right asserted in his complaint; (2) there is no adequate remedy at law for the violation of this right; (3) irreparable harm will result if the court does not order injunctive relief; and (4) if issued, the injunction would not be adverse to the public interest"); *Fernandez v. Bal Harbour Village*, 49 F.Supp.3d 1144, 1151 (S.D. Fla. 2014) (dismissing claim seeking mandatory injunctive relief because "[p]laintiff does not allege that he has suffered an irreparable harm for which there is no adequate remedy at law"); *La*

*Gorge Palace Condo Ass'n, Inc. v. QBE Ins. Corp.*, 733 F.Supp.2d 1332, 1334-35 (S.D. Fla. 2010) (dismissing complaint because plaintiff failed to allege the elements of specific performance, which include: "(1) the plaintiff is clearly entitled to this remedy; (2) there is no adequate remedy at law; and (3) justice must require it"). Indeed, the Complaint contains no allegations regarding irreparable harm or inadequate legal remedies.

Additional reasons why the Complaint is confusing are set forth below. Plaintiff should be required to assert claims in a clear fashion that does not require Mr. Comer to guess and surmise when he attempts to respond. For this general reason alone, the Court should dismiss the Complaint. *See, e.g., Grapski v. Barcia*, No. 1:10-CV-00140-MP-GRJ, 2011 WL 3477041, at *6-7 (N.D. Fla. Aug. 9, 2011) (dismissing complaint with leave to amend because the complaint approached the line separating clarity from obscurity in a fashion similar to a shotgun pleading).

### C. Tortious Interference (Counts I and III)

"The elements of tortious interference with a business relationship are '(1) the existence of a business relationship ... ; (2) knowledge of the relationship on the part of the defendant; (3) an intentional and unjustified interference with the relationship by the defendant; and (4) damage to the plaintiff as a result of the breach of the relationship.'" *Ethan Allen, Inc. v. Georgetown Manor, Inc.*, 647 So. 2d 812, 814 (Fla. 1994), quoting *Tamiami Trail Tours, Inc. v. Cotton*, 463 So. 2d

1126, 1127 (Fla. 1985); *see also Favret*, 2007 WL 1364342 at *3. Additionally, "the alleged business relationship must afford the plaintiff existing or prospective legal or contractual rights." *Ethan Allen, Inc.* at 814 (internal quotations omitted). "[A]n action for tortious interference with a business relationship requires a business relationship evidenced by an actual and identifiable understanding or agreement which in all probability would have been completed if the defendant had not interfered." *Id.* at 815.

### 1.    Tortious Interference with the Stephens (Count I)

Plaintiff alleges that it entered into negotiations with the Stephens for the construction of a new home in Walton County located outside of the Alys Beach development. Complaint ¶12. Plaintiff further alleges that it "reached agreement in principle for the building contract with Stephens, including a draft contract and work on design and selections. Stephens represented that they had selected [Plaintiff] as their builder and all that remained was finalizing the written memorialization of the agreement." Complaint ¶13. Then, oddly, Plaintiff suggests that its removal from the builder list, which governs only the Alys Beach development and not the Stephens' property, is the reason why Plaintiff lost the alleged deal with the Stephens. Complaint ¶¶12, 14. Plaintiff further alleges that, "[u]pon information and belief, Comer, while an employee and agent of [Founder], contacted Stephens for the improper purpose of encouraging Stephens to withdraw

from their business relationship with [Plaintiff] and not to use [Plaintiff] as their builder." Complaint ¶18.

No additional facts are set forth in Count I, which instead incorporates all facts set forth in the General Allegations. Complaint ¶¶29-36. Thus, the only facts alleged in support of the claim that Mr. Comer interfered with Plaintiff's relationship with the Stephens relate to Founder, through Mr. Comer, prohibiting Plaintiff from engaging in construction projects within Alys Beach and Mr. Comer's purported statements to the Stephens regarding that prohibition. These facts do not support a claim for tortious interference against Mr. Comer.

Founder's refusal to allow Plaintiff to build future projects in Alys Beach cannot interfere with property outside of Alys Beach. *Ethan Allen*, 647 So. 2d at 814 (the elements of a claim for tortious interference require "an intentional and unjustified interference with the relationship by the defendant"). Moreover, Mr. Comer has the fundamental right to speak with his family members, and even if he did not have this fundamental right, Founder's decision that it no longer wanted to do business with Plaintiff in the Alys Beach community could not have precluded Plaintiff from constructing a home for the Stephens outside of Alys Beach. Stated another way, there is no proximate cause between Founder precluding Plaintiff from future construction projects within Alys Beach and Plaintiff losing an alleged opportunity to build outside of Alys Beach. "As with most other torts, embedded

within the essential elements of the tort of intentional interference with a business relationship is the legal requirement that the plaintiff prove causation." *St. Johns River Water Management District v. Fernberg Geological Services, Inc.*, 784 So. 2d 500, 504 (Fla. 5th DCA 2001); *see also Ethyl Corp. v. Balter*, 386 So. 2d 1220, 1224 (Fla. 3d DCA 1980) ("There is no such thing as a cause of action for [tortious] interference which is only negligently or consequentially effected"); *Cherestal v. Sears Roebuck & Co.*, No. 6:12-CV-1681-ORL-28TBS, 2014 WL 644727, *5 (M.D. Fla. Feb. 19, 2014) ("To prevail on a claim for tortious interference with a business relationship, a plaintiff must also prove that the defendant induced or otherwise caused a party to sever the business relationship"); *Realauction.com LLC v. Grant Street Group, Inc.*, 82 So. 3d 1056, 1059 (Fla. 4th DCA 2011) ("The requisite showing of causation cannot be supported by mere supposition that defendant's interference caused the cessation of the business relationship"). As a matter of law, Plaintiff fails to state a claim against Mr. Comer for tortious interference with the Stephens based upon Founder's refusal to allow Plaintiff to build homes within Alys Beach.

Furthermore, Mr. Comer's alleged discussions with the Stephens do not support a claim for tortious interference. In a conclusory and speculative manner, paragraph 18 of the Complaint alleges that Mr. Comer "contacted Stephens for the improper purpose of encouraging Stephens to withdraw from their business

relationship with [Plaintiff] and to not use [Plaintiff] as their builder." Complaint ¶18. Plaintiff does not allege that Mr. Comer made any false, defamatory, or some other wrongful statements. *See Ibanez v. Florida Dep't of Bus. & Prof'l Regulation, Bd. of Accountancy*, 512 U.S. 136, 142, 114 S. Ct. 2084, 129 L. Ed. 2d 118 (1994) ("…disclosure of truthful, relevant information is more likely to make a positive contribution to decisionmaking than is concealment of such information…", and therefore, "only false, deceptive, or misleading commercial speech may be banned.") (internal citation omitted); *see also* Restatement (Second) of Torts § 772 (1979) ("[o]ne who intentionally causes a third person not to perform a contract or not to enter into a prospective contractual relation with another does not interfere improperly with the other's contractual relation, by giving the third person (a) truthful information, or (b) honest advice within the scope of a request for the advice"). Instead, Plaintiff alleges that Mr. Comer merely "encouraged" his aunt and uncle to have someone else build their home, which is insufficient to support a claim for tortious interference. Complaint ¶18.

If Plaintiff means to allege that Mr. Comer told the Stephens that Founder intended to not approve Plaintiff for future projects within Alys Beach, then Mr. Comer merely transmitted truthful information, which cannot constitute tortious interference. *Cherestal*, 2014 WL 644727, *4 ("Additionally, a plaintiff cannot be successful in a tortious interference case if the defendant merely gave a third party

truthful information"). As a matter of law, the alleged statements made by Mr. Comer to the Stephens are insufficient to support a claim.

For each of these reasons, the Court should dismiss Count I.

### 2.    Tortious Interference with Lot Owners (Count III)

Plaintiff alleges that it had "existing or prospective business relationships with lot owners in Alys Beach for the purpose of residential construction in Alys Beach" and that these relationships "would have resulted in binding contracts but for the unjustified interference of Defendants." Complaint ¶¶46, 47. No specific deals are identified by customer name or otherwise.

"In Florida, a plaintiff may properly bring a cause of action alleging tortious interference with present or prospective customers but no cause of action exists for tortious interference with a business's relationship to the community at large." *Ethan Allen*, 647 So. 2d at 815; *Ferguson Transp., Inc. v. North American Van Lines, Inc.,* 687 So. 2d 821, 822 (1996) (holding that "in order to establish the tort of tortious interference with a business relationship, the plaintiff must prove a business relationship with identifiable customers"); *Sarkis v. Pafford Oil Co.,* 697 So. 2d 524, 526 (Fla. 1st DCA 1997) (affirming dismissal of a tortious interference claim that failed to identify the customers who were the subject of the alleged interference); *Duty Free Americas, Inc. v. Estee Lauder Companies, Inc.,* 946 F.Supp.2d 1321, 1338 (S.D. Fla. 2013) (dismissing tortious interference claim

because it failed to identify "an actual and identifiable understanding or agreement which in all probability would have been completed if the defendant had not interfered"); *St. Johns River*, 784 So. 2d at 505 ("The speculative hope of future business is not sufficient to sustain the tort of interference with a business relationship"). Because the Complaint fails to identify specific deals with specific lot owners within Alys Beach, Count III fails to state a cause of action. If Plaintiff has specific customers with whom it had existing business relationships sufficient to satisfy the requirements of Florida law on tortious interference, then Plaintiff should be required to name each such customer and describe the nature and extent of the relationship with each such customer. Neither Founder nor the Court should be required to speculate regarding Plaintiff's claims.

Count III further fails to state a proper legal claim because Mr. Comer was part of the business relationship with which he supposedly interfered. Plaintiff alleges that Mr. Comer, through his position with Founder, refused to allow Plaintiff to build within Alys Beach. Founder is the developer of the Alys Beach community, it owns property within that community, and it has the right to determine and enforce the rules that govern the development of the community, including the approval of builders. Lot owners within Alys Beach cannot use a particular builder without Founder's express approval; therefore, Founder and its agents are part of the business relationship regarding the construction of any home

within Alys Beach. As a matter of law, Mr. Comer cannot tortiously interfere with Plaintiff's solicitation of construction jobs when Mr. Comer was himself necessarily part of the alleged business relationship. *Favret*, 2007 WL 1364342, *4 (dismissing claim for tortious interference because the plaintiff could not assert that the defendants were "strangers to the relationship").

Furthermore, Mr. Comer cannot unjustifiably interfere when his alleged actions relate to Founder's exercise of its right to control the nature and course of development within Alys Beach. In approving or disapproving builders who will construct homes within the community, Founder is acting to protect its own economic interests. Therefore, any role Mr. Comer had in the removal of Plaintiff from an approved builder list is privileged as a matter of law in the context of tortious interference. *Johnson Enterprises of Jacksonville, Inc. v. FPL Grp., Inc.,* 162 F.3d 1290, 1321 (11th Cir. 1998) ("Florida law recognizes the principle that actions taken to safeguard or protect one's financial interest, so long as improper means are not employed, are privileged").

Finally, Plaintiff has affirmatively alleged that Mr. Comer interfered with the supposed business relationships in an effort to compete for business. Complaint ¶15 ("Upon information and belief, Defendants were motivated, in part, by malice toward [Plaintiff] based on criticism of management of Alys Beach, and by a desire to eliminate competition for building contracts in Alys Beach").

Plaintiff's affirmative contention that Mr. Comer engaged in his alleged actions in an effort to compete for business renders the tortious interference claim subject to dismissal. *International Sales & Service, Inc. v. Austral Insulated Products, Inc.*, 262 F.3d 1152, 1158 (11th Cir. 2001) ("Florida law recognizes the right of competitors to compete for customers"). It makes no difference if, as Plaintiff alleges, Mr. Comer was engaging in competitive behavior while also holding some malice toward Plaintiff. As one Florida appellate court has observed, "it is irrelevant whether the person who takes authorized steps to protect his own interests does so while also harboring some personal malice or ill-will towards the plaintiff..." *Ethyl Corp.,* 386 So. 2d at 1225; *see also Menendez,* 521 So. 2d 178 at 180 (discussing financial interest privilege and stating that "conduct engaged in for legitimate purposes, even if tinged with animosity and malice, does not give rise to a cause of action for interference with a contractual relationship").

For each of these reasons, Count III should be dismissed.

### D.   Negligence (Count V)

Plaintiff sues for negligence claiming "Comer had a duty of care, among other things, with regard to [Plaintiff] and its business relationships and its implementation of the Declaration." Complaint ¶63. Plaintiff further alleges that "Comer breached these duties by, among other things, removing [Plaintiff] from the Alys Beach approved builder list, amending the Declaration in violation of law,

interfering with [Plaintiff's] business relationships, and other actions." Complaint ¶64. Thus, supposedly, Mr. Comer owes a legal duty to Plaintiff to act in a reasonable manner concerning Plaintiff's business relationships and with regard to the manner in which Mr. Comer assists Founder in the implementation of the Declaration. No such duties exist.

"[T]he determination of whether a duty is owed presents a question of law to be determined by the court." *Jackson Hewitt, Inc. v. Kaman*, 100 So. 3d 19, 28 (Fla. 2d DCA 2011). "The duty element of negligence is a threshold legal question; if no legal duty exists, then no action for negligence may lie." *Jenkins v. W.L. Roberts, Inc.*, 851 So. 2d 781, 783 (Fla. 1st DCA 2003). The Restatement (Second) of Torts recognizes four sources of a duty: (1) legislative enactments or administration regulations; (2) judicial interpretations of such enactments or regulations; (3) other judicial precedent; and (4) a duty arising from the general facts of the case. *See* Restatement (Second) of Torts § 285 (1965); *Aguila v. Hilton, Inc.*, 878 So. 2d 392, 395 n.1 (Fla. 1st DCA 2004), *rev. denied*, 891 So. 2d 549 (Fla. 2004). Florida law recognizes that a legal duty arises "whenever a human endeavor creates a generalized and foreseeable risk of harming another." *National Title Insurance Company v. Lakeshore I Condominium Association, Inc.*, 691 So. 2d 1104, 1106 (Fla. 3d DCA 1997), citing *McCain v. Florida Power*

*Corp.,* 593 So. 2d 500, 503 (Fla. 1992). Here, the only possible source of the supposed duties appears to be the general facts of the case.

The general facts alleged by Plaintiff are that it is a home builder that has been precluded from construction projects within Alys Beach. Mr. Comer's alleged involvement relates merely to his employment with Founder. There is no other relationship, special or otherwise, alleged to exist between Mr. Comer and Plaintiff. Mr. Comer owes no fiduciary or other responsibilities to Plaintiff, and there is no basis to conclude that Mr. Comer owes a duty to Plaintiff regarding "its business relationships." No such duties exist as a matter of law. *See, e.g., Becks v. Emery-Richardson, Inc.*, No. 86-6866-CIV, 1990 WL 303548, *26 (S.D. Fla. Dec. 21, 1990) ("In short, plaintiffs fail to cite any statute, common law principle or any other legal authority creating a duty on these defendants to supervise or control IGBE's operations for their benefit or protection. Absent such a duty, an action for negligence will not lie."). If such a duty existed in the general business environment, then businesses could sue for just about anything that resulted in some economic disappointment, such as general mismanagement of business matters. Such claims are not allowed. *See Virgilio v. Ryland Group, Inc.*, 680 F.3d 1329, 1339 (11th Cir. 2012) (rejecting plaintiff's "zone of risk" arguments in the context of a commercial relationship and stating that "[w]here the plaintiff

seeks only the recovery of an economic loss, the duty element of negligence law serves as an important barrier to over-extension of liability").

To the extent Plaintiff hopes to establish a negligence duty that springs from the Declaration, no such duty exists. A cause of action in negligence "must be based upon a legal obligation for the benefit of another." *Robertson v. Deak Perera (Miami), Inc.,* 396 So. 2d 749, 750 (Fla. 3rd DCA 1981). "Negligence in the air, so to speak, will not do." *Id.* at 750, citing Pollock, Law of Torts 468 (13th ed. 1920). Plaintiff fails to allege any specific language within the Declaration that creates a duty on the part of Mr. Comer, because no such language exists. Plaintiff is not even a party to the Declaration, so Plaintiff is owed no obligations under it.

Finally, Plaintiff cannot sue Mr. Comer in negligence for allegedly failing to comply with the Declaration or some other agreement because a negligence claim cannot be used to enforce an alleged contract. *Burdick v. Bank of America, N.A.,* 99 F.Supp.3d 1372, 1378 (S.D. Fla. 2015) (dismissing negligence claim). "It is only when the breach of contract is attended by some additional conduct which amounts to an independent tort that such a breach can constitute negligence." *Id.* at 1378, quoting *Tiara Condominium Ass'n, Inc. v. Marsh & McLennan Companies, Inc.,* 110 So. 3d 399, 408-09 (Fla. 2013) (Pariente, J., Concurring).

For each of these reasons, the Court should dismiss Count V.

## IV. CONCLUSION

Based upon the foregoing, Mr. Comer respectfully requests that this Court dismiss the Complaint pursuant to Rule 12(b)(5) and quash service because Mr. Comer was improperly served outside the 120-day requirement. Alternatively, the Court should dismiss the Complaint under Rule 12(b)(6) for failure to state a claim upon which relief can be granted. Alternatively, the Court should direct Plaintiff to file an amended complaint providing Mr. Comer with a more definite statement.

### Local Rule 7.1(F) Certificate

Pursuant to Local Rule 7.1(F), the instant Motion contains 5,800 words.

Matthew J. Meyer
Florida Bar No. 116653
matthew.meyer@ansalaw.com
Tyler J. Derr
Florida Bar No. 96639
tyler.derr@ansalaw.com
**ANSA ASSUNCAO, LLP**
100 South Ashley Drive, Suite 1740
Tampa, Florida 33602
813-221-5206 (phone)
813-221-6206 (fax)
*Attorneys for Defendants EBSCO Gulf Coast Development, Inc. and Jason Comer*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the above and foregoing has been furnished via email to ROBERT A. GOODWIN, III, ESQ. at tgoodwin@kaglawfirm and mbaughn@kaglawfirm, Keefe, Anchors & Gordon, PA, 2113 Lewis Turner Boulevard, Suite 100, Fort Walton Beach, Florida 32547, *attorneys for Plaintiffs,* and ROBERT C. PALMER, III, ESQ. at bpalmer@wpslawyers, Wade, Palmer, and Shoemaker, PA, 15 North Palafox Street, Pensacola, Florida 32502, *additional counsel for Defendants EBSCO Gulf Coast Development, Inc. and Jason Comer,* on this 3rd day of February, 2016.

_____
Attorney