**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF FLORIDA**
**PENSACOLA DIVISION**

CHRISTIAN TENNANT CUSTOM
HOMES OF FLORIDA, INC.,

      Plaintiff,

v.                           CASE NO.: 3:15-cv-00585-MCR-CJK

EBSCO GULF COAST DEVELOPMENT,
INC. and JASON COMER,

      Defendants.

**DEFENDANTS' MOTION TO DISMISS AND QUASH SERVICE,**
**AND INCORPORATED MEMORANDUM OF LAW**

Defendants EBSCO Gulf Coast Development, Inc. ("**Founder**") and  Jason

Comer ("**Mr. Comer**"), through undersigned counsel and pursuant to Federal

Rules of Civil Procedure 12(b)(5) and 12(b)(6), move to dismiss the Second

Amended Complaint ("**Complaint**") filed by Plaintiff Christian Tennant Custom

Homes of Florida, Inc. ("**Plaintiff**") and to quash service upon Mr. Comer.

## I.    PRELIMINARY STATEMENT

Through an Order dated April 5, 2016 (Dkt. 24), the Court granted in part

the Motion to Dismiss (Dkt. 6) filed by Founder.  Plaintiff filed its Second

Amended Complaint (Dkt. 25) on April 19, 2016.  The Motion to Dismiss and

Quash (Dkt. 16) and Reply Brief (Dkt. 22) filed by Mr. Comer have not been ruled

upon by the Court.

Alys Beach is a private community that is the result of Founder's investment of significant time and resources over a period of years.  Founder purchased the raw land and developed residential and commercial properties upon it.  The community is unique, with high-end homes and particular requirements for design and construction.  Pursuant to the Declaration of Covenants, Conditions and Restrictions for the Neighborhood at Alys Beach, recorded at Book 2654, Page 2958 of the Official Records of Walton County ("**Declaration**"), as amended at Book 2887, Page 3029, Founder has the right to control the manner and pace of the community's construction.  Among its other rights, Founder has the right to approve or disapprove builders proposed by individual lot owners.  Builders like Plaintiff have no right to approval, and they are not parties to the Declaration.

Plaintiff has constructed homes in Alys Beach.  Founder decided it did not want to do any further business with Plaintiff, so it informed Plaintiff that it would not approve any further construction projects within Alys Beach.  Likewise, Elton Stephens (who is Mr. Comer's uncle and who also serves as a member of the board of directors of Founder) decided he did not want to do business with Plaintiff.  Apparently in recognition that Plaintiff has no contract right to construct homes within Alys Beach, and that Plaintiff never had any enforceable contract to build a home for Elton Stephens, Plaintiff has asserted a hodgepodge of claims seeking to

accomplish indirectly that which it cannot accomplish directly.   The Second Amended Complaint should be dismissed in its entirety.

## II.   STANDARD OF REVIEW

"A party may move for dismissal under Rule 12(b)(5) for insufficient service of process."  *In re Trasylol Products Liab. Litig.-MDL-1928*, No. 08-CV-81212, 2011 WL 5529934, at *4 (S.D. Fla. July 21, 2011), citing Fed.R.Civ.P. 12(b)(5). Importantly, "the plaintiff on a Rule 12(b)(5) motion bears the burden of establishing this jurisdictional defense."   *Id.*, citing *Lowdon PTY Ltd. v. Westminster Ceramics, LLC,* 534 F.Supp.2d 1354, 1360 (N.D. Ga. 2008) ("The burden is on [the plaintiff] to establish the validity of service [on the defendant]").

"A motion to dismiss pursuant to Fed.R.Civ.P.12(b)(6) operates to test the sufficiency of the complaint; indeed it is designed to eliminate counts or complaints that fail to state a claim upon which relief can be granted.  Under Rule 12(b)(6), the party moving for dismissal for failure to state a claim upon which relief can be granted has the burden of proving that a claim has not been stated.  To prevail, the movant must show 'beyond doubt that the [claimant] can prove no set of facts in support of his claim [that] would entitle him to relief.'"  *Venezia Resort, LLC v. Favret*, No. 3:07-CV-74-MCR-EMT, 2007 WL 1364342, at *2 (N.D. Fla. May 8, 2007), citing *Conley v. Gibson,* 355 U.S. 41, 45–46 (1957).

The reviewing court accepts the non-moving party's factual allegations as true and draws all reasonable inferences in the non-moving party's favor, construing the pleader's allegations liberally. *See In re v. Johannessen,* 76 F.3d 347, 349–50 (11th Cir. 1996). While it is true that Federal Rule of Civil Procedure 8(a)(2) requires only a short and plain statement of the claim showing that the pleader is entitled to relief, nevertheless, "[c]onclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal." *Jackson v. Bellsouth Telecommunications,* 372 F.3d 1250, 1262 (11th Cir. 2004). On a motion to dismiss, the court may consider the pleadings and all exhibits attached thereto. *See Grossman v. Nationsbank,* 225 F.3d 1228, 1231-32 (11th Cir. 2000); Fed.R.Civ.P.10(c).

The Court in *Iqbal* explained that, although a court must accept as true all of the factual allegations contained in a complaint, that requirement does not apply to legal conclusions; therefore, pleadings must include factual allegations to support the legal claims asserted. *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949-53 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. at 1949, citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To survive a motion to dismiss, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S.Ct. at 1949.

On a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain,* 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986).

## III.   ARGUMENT

Plaintiff's Complaint asserts three claims against Mr. Comer: (1) tortious interference with an alleged business relationship with the Stephens (Count I); (2) tortious interference with an alleged business relationship with Alys Beach lot owners (Count III); and (3) negligence (Count V).  If they are allowed to survive despite untimely service of the Complaint upon Mr. Comer, all of the claims asserted against Mr. Comer in the Second Amended Complaint should be dismissed because they fail to state cognizable legal claims.  Likewise, the claims asserted against Founder in Count II (tortious interference with business relationship with the Stephens), Count III (tortious interference with business relationships with Alys Beach lot owners), Count IV (breach of contract), Count VI (negligence), Count VII (quantum meruit), and Count VIII (promissory estoppel) should all be dismissed.

### A.   PLAINTIFF'S FAILURE TO TIMELY SERVE MR. COMER

For purposes of brevity, Mr. Comer incorporates by reference the arguments regarding untimely service of process set forth in his Motion to Dismiss and Quash Service (Dkt. 16) and his Reply Brief (Dkt. 22).

**B.     ALL OF PLAINTIFF'S CLAIMS IN THE SECOND AMENDED COMPLAINT ARE SUBJECT TO DISMISSAL**

Plaintiff has asserted claims for tortious interference (Counts I, II and III), breach of contract (Count IV), negligence (Counts V and VI), quantum meruit (Count VII), and promissory estoppel (Count VIII) against Founder and/or Mr. Comer.  All of the claims are insufficient as a matter of law.

**1.     Tortious Interference and Negligence Claims Barred by Economic Loss Rule (Counts I, II, III, V, VI)**

Plaintiff's claims for tortious interference and negligence are founded upon the Defendants' purported failure to comply with the terms of an alleged contract by removing Plaintiff from the approved builder list.  For example:

- In Count I (tortious interference), Plaintiff alleges: "While negotiations were ongoing between [Plaintiff] and Stephens, Comer **removed [Plaintiff] from the approved builder list for Alys Beach in violation of the Declaration**."  Second Amended Complaint ¶14 (emphasis supplied).

- In Count II (tortious interference), Plaintiff alleges: "While negotiations were ongoing between [Plaintiff] and Stephens, EBSCO-GCD, **removed [Plaintiff] from the approved builder list for Alys Beach in violation of the Declaration**."  Second Amended Complaint ¶32 (emphasis supplied).

- In Count III (tortious interference), Plaintiff alleges: "Defendants, through a joint concerted effort, **removed [Plaintiff] from the approved builder list for Alys Beach in violation of the Declaration**."  Second Amended Complaint ¶52 (emphasis supplied).

- In Count V (negligence), Plaintiff alleges: "Comer breached these duties by, among other things, **removing [Plaintiff] from the Alys Beach approved builder list in contravention of the standards set**

**forth in the Declaration**, amending the Declaration in violation of law in such a way as to prevent [Plaintiff] from regaining approval on the builder list, interfering with [Plaintiff's] business relationships, and other actions." Second Amended Complaint ¶76 (emphasis supplied).

- In Count VI (negligence), Plaintiff alleges: "EBSCO-GCD breached these duties by, among other things, **removing [Plaintiff] from the Alys Beach approved builder list in contravention of the Declaration**, amending the Declaration in violation of law in a way that prevented [Plaintiff] from regaining its approved status on the builder list, interfering with [Plaintiff's] business relationships, and other actions." Second Amended Complaint ¶89 (emphasis supplied).

These allegations supporting the negligence and tortious interference claims are fundamentally the same as those alleged in the Breach of Contract claim:

- "EBSCO-GCD entered into a contract under which [Plaintiff] was obligated to advertise, promote, and offer residential construction services in Alys Beach on condition of and in exchange for [Plaintiff's] **right to be removed from the approved builder list only for cause related to poor construction performance as specified in the original Declaration**…." Second Amended Complaint ¶76 (emphasis supplied).

- "EBSCO-GCD thereafter **breached this contract by, among other things, unilaterally and without cause removing** [Plaintiff] **from the approved builder list**, amending the Declaration for the purpose of barring [Plaintiff] from Alys Beach without cause and in violation of the amendment provisions of the original Declaration and applicable law, informing existing and prospective lot owners in Alys Beach that [Plaintiff] was prohibited from building in the community, and interfering with [Plaintiff's] existing and prospective business relationships with lot owners in Alys Beach, among other actions." Second Amended Complaint ¶76 (emphasis supplied).

Thus, the alleged facts that Plaintiff had the right to remain on the approved builder list and that the Defendants improperly removed it from that list serve as

7

fundamental factual support for both the tort and contract claims (*see* Counts I, II, III, IV, V and VI of the Second Amended Complaint).  Stated another way: in the absence of the alleged improper removal from the approved builder list, Plaintiff would have no factual basis for his tortious interference, negligence, or contract claims.  All of these claims, and their alleged resulting damages, are dependent upon an alleged contract right that Plaintiff had to remain on the approved builder list.  This alleged contract obligation cannot form the basis for tort claims.

The Florida Supreme Court's decision in *Tiara Condo. Ass'n, Inc. v. Marsh & McLennan Companies, Inc*., 110 So. 3d 399, 407 & 410 n. 10 (Fla. 2013), generally held that the economic loss rule no longer extends beyond the products liability context.  This does not mean, however, that *Tiara* effectively abandoned long-standing Florida jurisprudence that contract principles govern contract obligations.  As the Southern District has explained:

> However, *Tiara* did not upset "fundamental contractual principles" which continue to delineate the general boundary between contract law and tort law regardless of the breadth of the economic loss doctrine.  *Id*. at 408 (Pariente, J., concurring). That is, "[f]undamental contractual principles continue to bar a tort claim where the offending party has committed no breach of duty independent of a breach of its contractual obligations."  *Freeman v. Sharpe Res. Corp*., 2013 WL 2151723, at *8 (M.D. Fla. May 16, 2013) (citing *Tiara*, 110 So.3d at 407-09).

*Alhassid v. Bank of America, N.A*., 60 F.Supp.3d 1302, 1318 (S.D. Fla. 2014) (dismissing civil conspiracy claim because the facts "alleged by Plaintiffs to

substantiate their claim for civil conspiracy are identical to their remaining breach of contract allegations"); *see also Lucarelli Pizza & Deli v. Posen Construction, Inc.,* 173 So. 3d 1092, 1095 (Fla. 2d DCA 2015) ("In bringing this lawsuit, the Plaintiffs in this case appear to read *Curd* and *Tiara Condominium* as opening the door to virtually any claim in negligence for purely economic loss. We are inclined to read these cases more narrowly."); *Eclipse Medical, Inc. v. American Hydro-Surgical Instruments, Inc*., 262 F.Supp.2d 1334, 1353 (S.D. Fla. 1999) (concluding that tortious interference claims failed as a matter of law because the supporting "allegations simply restate the Plaintiffs' claims for breach of the Agreement, and as such this claim [for tortious interference] is barred under Florida's economic loss rule" and "[t]he damages claimed by Plaintiffs here are identical to those claimed under the breach of contract theory, and the facts necessary to prove this type of interference are identical to those needed to prove any breach of contract").

Here, Plaintiff alleges in each of its claims for tortious interference and negligence that the Defendants' act of removing Plaintiff from the approved builder list caused Plaintiff to lose profits related to business relationships with lot owners. Second Amended Complaint ¶¶14-20, 32-38, 49-57, 68-77, 80-91. These are the same facts alleged in Plaintiff's Breach of Contract claim in Count IV. Second Amended Complaint ¶¶60-64. Furthermore, the damages alleged in each

of these Counts are the same, which are lost profits related to construction projects.

As the Southern District has explained:

> The only reason [the defendant] would have any obligations regarding a "credit hold" policy, shipment of products by a certain type of transport, and the like would be if the parties' contractual relationship were to create such obligations. **These are not the type of duties that members of society generally owe to one another, i.e., the types of duties generally enforceable under tort law.** While the alleged conduct might amount to breaches of the parties' Agreement, the economic loss rule bars Plaintiffs from re-labeling such breaches as tortious conduct.

*Eclipse Medical*, 262 F.Supp.2d at 1356 (emphasis supplied).  Similarly here, the only reason Founder or Mr. Comer could have any supposed obligations regarding builder approval would be pursuant to alleged contract obligations.  These are not the types of duties that members of society generally owe to one another.  Therefore, the tortious interference and negligence claims are barred by the economic loss rule.  The Court should dismiss Counts I, II, III, V, and VI.

### 2.   All of Plaintiff's Claims Fail Because Plaintiff Lacks Standing to Enforce the Declaration

Plaintiff's claims for tortious interference (Counts I, II and III), breach of contract (Count IV), negligence (Counts V and VI), quantum meruit (Count VII), and promissory estoppel (Count VIII) fundamentally rely upon the allegation that Founder breached obligations under the Declaration.  For example:

- Count I (tortious interference) alleges "[w]hile negotiations were ongoing between [Plaintiff] and Stephens, Comer removed [Plaintiff]

from the approved builder list for Alys Beach **in violation of the Declaration**."  Second Amended Complaint ¶14.

- Count II (tortious interference) alleges "[w]hile negotiations were ongoing between [Plaintiff] and Stephens, EBSCO-GCD, removed [Plaintiff] from the approved builder list for Alys Beach **in violation of the Declaration**."  Second Amended Complaint ¶32.

- Count III (tortious interference) alleges "Defendants, through a joint concerted effort, removed [Plaintiff] from the approved builder list for Alys Beach **in violation of the Declaration**."  Second Amended Complaint ¶52.

- Count IV (breach of contract) alleges "EBSCO-GCD thereafter breached this contract by, among other things, **unilaterally and without cause removing [Plaintiff] from the approved builder list**, amending the Declaration for the purpose of barring [Plaintiff] from Alys Beach without cause and in violation of the amendment provisions of the original Declaration and applicable law…."  Second Amended Complaint ¶63.

- Count V (negligence) alleges "Comer breached these duties by, among other things, **removing [Plaintiff] from the Alys Beach approved builder list in contravention of the standards set forth in the Declaration**, amending the Declaration in violation of law in such a way as to prevent [Plaintiff] from regaining approval on the builder list, interfering with [Plaintiff's] business relationships, and other actions."  Second Amended Complaint ¶76.

- Count VI (negligence) alleges "EBSCO-GCD further breached its duties by failing to properly train and supervise Comer to prevent his negligent behavior in **improperly facilitating the removal of [Plaintiff] from the approved builder list** and his improper inference with [Plaintiff's] customers and clients."  Second Amended Complaint ¶90.

- Count VII (quantum meruit) alleges "EBSCO-GCD breached its obligations to [Plaintiff] by, among other things, **unilaterally and without cause removing [Plaintiff] from the approved builder list**,

amending the Declaration for the purpose of barring [Plaintiff] from Alys Beach without cause and in violation of the amendment provisions of the original Declaration and applicable law...." Second Amended Complaint ¶101.

- Count VIII (promissory estoppel) alleges "EBSCO-GCD breached its obligations to [Plaintiff] by, among other things, **unilaterally and without cause removing [Plaintiff] from the approved builder list**, amending the Declaration for the purpose of barring [Plaintiff] from Alys Beach without cause and in violation of the amendment provisions of the original Declaration and applicable law…." Second Amended Complaint ¶113.

All of these claims fail as a matter of law because Plaintiff, as neither a party nor third-party beneficiary to the Declaration, lacks legal standing to enforce it. The Declaration contains covenants, conditions, and restrictions for Alys Beach property owners and it expressly identifies the parties to the contract:

6.3 <u>Duration</u>.   The covenants and restrictions contained in this Declaration shall run with and bind the Neighborhood and shall inure to the benefit of and be **enforceable by the Founder, the Neighborhood Association and its Board, and all Owners of property within the Neighborhood**, their respective legal representatives, heirs, successors or assigns for twenty years…

Declaration §6.3 (emphasis supplied).[1]   Plaintiff is not the Founder, an Owner, or the Neighborhood Association.   It is a home builder.   Therefore, Plaintiff is not a party to, and has no right to enforce, the Declaration.   "Unless a person is a party to

---

[1] The Declaration is a public document this Court may consider on a motion to dismiss.  *See Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1280-81 (11th Cir.1999) (holding district court was authorized at the motion to dismiss stage to take judicial notice of public documents).

a contract, that person may not sue…for breach of that contract where the non-party has received only an incidental or consequential benefit of the contract." *Morgan Stanley DW Inc. v. Halliday*, 873 So. 2d 400, 403 (Fla. 4th DCA. 2004) (footnote omitted).

Furthermore, Plaintiff has not even asserted it is a third-party beneficiary of the Declaration.  The elements of such a claim require (1) the existence of a contract; (2) the clear or manifest intent of the contracting parties that the contract primarily and directly benefit the third party; (3) breach of the contract by a contracting party; and (4) damages to the third-party resulting from the breach. *Jenne v. Church & Tower, Inc.,* 814 So. 2d 522, 524 (Fla. 4th DCA 2002). Plaintiff has not asserted any such allegations, even in a conclusory fashion, and no factual support exists for such a claim even if it were alleged because Plaintiff never became a party or third-party beneficiary to the Declaration.

The process of builder approval under the Declaration governs the relationship between Founder and the lot owners, given that owners are required to use only approved builders to construct homes within Alys Beach.  The provisions of the Declaration explain the rights and obligations between Founder and lot owners, not between Founder and builders.  The Declaration expressly informs lot owners that they cannot use any builder they may desire; only builders approved by Founder may be used.  The Declaration does not obligate Founder to maintain

any approved builder list, or to approve any particular builder for any particular project, which is why Plaintiff has not identified any provisions of the Declaration that provide any lot owner or builder with any such rights.

Because Plaintiff has no standing to sue for alleged violations of the Declaration, Plaintiff cannot rely upon alleged violations of the Declaration in an effort to bootstrap tort or other claims. Plaintiff has no rights under the terms of the Declaration to become an approved builder or to perpetually remain an approved builder for any and all projects. Because each of its claims relies heavily upon an alleged legal obligation owed to Plaintiff under the terms of the Declaration, but Plaintiff has no legal rights under the Declaration, Plaintiff has failed to state legal claims. Therefore, all Counts should be dismissed.

### 3. Failure to State Injunction Claims (Counts III, IV, VII, VIII)

Plaintiff demands injunctive and unspecified equitable relief in his claims for tortious interference (Count III), breach of contract (Count IV), quantum meruit (Count VII), and promissory estoppel (Count VIII). However, Plaintiff has not alleged any of the required elements of an injunction claim. *See Thomas v. Bryant*, 614 F.3d 1288, 1317 (11th Cir. 2010) ("To obtain a permanent injunction, a party must show: (1) that he has prevailed in establishing the violation of the right asserted in his complaint; (2) there is no adequate remedy at law for the violation of this right; (3) irreparable harm will result if the court does not order injunctive

relief; and (4) if issued, the injunction would not be adverse to the public interest");

*Fernandez v. Bal Harbour Village*, 49 F.Supp.3d 1144, 1151 (S.D. Fla. 2014)

(dismissing claim seeking mandatory injunctive relief because "[p]laintiff does not

allege that he has suffered an irreparable harm for which there is no adequate

remedy at law"); *La Gorge Palace Condo Ass'n, Inc. v. QBE Ins. Corp*., 733

F.Supp.2d 1332, 1334-35 (S.D. Fla. 2010) (dismissing complaint because plaintiff

failed to allege the elements of specific performance, which include: "(1) the

plaintiff is clearly entitled to this remedy; (2) there is no adequate remedy at law;

and (3) justice must require it").

Indeed, the Second Amended Complaint alleges none of these elements,

even though Plaintiff seeks the extraordinary remedy of mandatory injunctive

relief in the form of a Court mandate requiring Founder to allow Plaintiff to

construct any projects it desires within Alys Beach, essentially overriding all of

Founder's rights to control its own real estate development.  *See Fox v. City of

West Palm Beach*, 383 F.2d 189, 194 (5th Cir. 1967) ("There is no question but

that mandatory injunctions are to be sparingly issued and upon a strong showing of

necessity and upon equitable grounds which are clearly apparent").  For each of

these reasons, the Court should dismiss Counts III, IV, VII, and VIII.

### 4.     Failure to State Claim for Tortious Interference Regarding Stephens (Counts I &II)

 "The elements of tortious interference with a business relationship are '(1) the existence of a business relationship…; (2) knowledge of the relationship on the part of the defendant; (3) an intentional and unjustified interference with the relationship by the defendant; and (4) damage to the plaintiff as a result of the breach of the relationship.'" *Ethan Allen, Inc. v. Georgetown Manor, Inc*., 647 So. 2d 812, 814 (Fla. 1994), quoting *Tamiami Trail Tours, Inc. v. Cotton*, 463 So. 2d 1126, 1127 (Fla. 1985); *see also Favret,* 2007 WL 1364342 at *3.  Additionally, "the alleged business relationship must afford the plaintiff existing or prospective legal or contractual rights."  *Ethan Allen, Inc.* at 814 (internal quotations omitted). "[A]n action for tortious interference with a business relationship requires a business relationship evidenced by an actual and identifiable understanding or agreement which in all probability would have been completed if the defendant had not interfered." *Id*. at 815.

Plaintiff alleges in Count I: "Upon information and belief, Comer contacted Stephens for the improper purpose of encouraging Stephens to withdraw from their business relationship with [Plaintiff] and to not use [Plaintiff] as their builder." Second Amended Complaint ¶17.  Plaintiff alleges in Count II: "Upon information and belief, EBSCO-GDC, by and through its employees or agents, contacted Stephens for the improper purpose of encouraging Stephens to withdraw from their

business relationship with [Plaintiff] and to not use [Plaintiff] as their builder." Second Amended Complaint ¶35. These claims fail as a matter of law.

Mr. Comer has the right to speak with his uncle and to "encourage" his family members to avoid certain vendors, just like any family member may "encourage" other family members to use or not use a particular builder, landscaper, car dealer, lawyer, banker, doctor, or any other type of vendor. Simply "encouraging" family members to do or not do business with certain vendors does not expose the members of the family to claims for tortious interference.

Plaintiff does not allege that Mr. Comer made any false, defamatory, or some other wrongful statements to his uncle, therefore Mr. Comer's alleged statements are not actionable. *See Ibanez v. Florida Dep't of Bus. & Prof'l Regulation, Bd. of Accountancy*, 512 U.S. 136, 142, 114 S. Ct. 2084, 129 L. Ed. 2d 118 (1994) ("disclosure of truthful, relevant information is more likely to make a positive contribution to decision making than is concealment of such information," and therefore, "only false, deceptive, or misleading commercial speech may be banned") (internal citation omitted); *see also* Restatement (Second) of Torts § 772 (1979) ("[o]ne who intentionally causes a third person not to perform a contract or not to enter into a prospective contractual relation with another does not interfere improperly with the other's contractual relation, by giving the third person (a) truthful information, or (b) honest advice within the scope of a request for the

advice"); *Cherestal v. Sears Roebuck & Co*., No. 6:12-CV-1681-ORL-28TBS, 2014 WL 644727, *4 (M.D. Fla. Feb. 19, 2014) ("Additionally, a plaintiff cannot be successful in a tortious interference case if the defendant merely gave a third party truthful information").   Thus, neither Mr. Comer allegedly informing his uncle of Plaintiff's removal from the approved builder list, nor Mr. Comer allegedly seeking to convince his uncle to terminate any discussions with Plaintiff, is a sufficient act by Mr. Comer to support a claim for tortious interference.

Finally, there is no proximate cause between Plaintiff's removal from the approved builder list and Plaintiff's alleged prospective business relationship with the Stephens regarding property outside of Alys Beach.   "As with most other torts, embedded within the essential elements of the tort of intentional interference with a business relationship is the legal requirement that the plaintiff prove causation." *St. Johns River Water Management District v. Fernberg Geological Services, Inc*., 784 So. 2d 500, 504 (Fla. 5th DCA 2001); *see also Ethyl Corp. v. Balter*, 386 So. 2d 1220, 1224 (Fla. 3d DCA 1980) ("There is no such thing as a cause of action for [tortious] interference which is only negligently or consequentially effected"); *Cherestal*, 2014 WL 644727, *5 ("To prevail on a claim for tortious interference with a business relationship, a plaintiff must also prove that the defendant induced or otherwise caused a party to sever the business relationship"); *Realauction.com LLC v. Grant Street Group, Inc*., 82 So. 3d 1056, 1059 (Fla. 4th DCA 2011) ("The

requisite showing of causation cannot be supported by mere supposition that defendant's interference caused the cessation of the business relationship").

The alleged interference must be both direct and intentional to satisfy the element of causation. For example, in *Lawler v. Eugene Wuesthoff Memorial Hosp. Ass'n*, 497 So. 2d 1261, 1263 (Fla. 5th DCA 1986), a physician sued a hospital for revoking his staff privileges and asserted a claim for tortious interference with patient relationships. The appellate court affirmed the dismissal of the tortious interference claim, and explained:

> Regarding the allegations in Count I, the only act complained of as wrongfully taken by the appellees was the termination of Dr. Lawler's staff privileges. The business relationships allegedly damaged were Dr. Lawler's relationships with his patients and other doctors in the community. An essential element of a claim for intentional interference with an advantageous business relationship is that the interference be both direct and intentional. *Rosa v. Florida Coast Bank*, 484 So.2d 57 (Fla. 4th DCA 1986); *Ethyl Corp. v. Balter*, 386 So.2d 1220 (Fla. 3d DCA 1980), *cert. denied*, 452 U.S. 955, 101 S.Ct. 3099, 69 L.Ed.2d 965 (1981). The complaint failed to allege direct interference by the appellees with the doctor/patient, doctor/doctor relationships. Clearly, the alleged interference with these relationships was only an indirect consequence of the termination of Dr. Lawler's staff privileges. *Cf.,* 4 Restatement (Second) of Torts § 766C (1979).

*Id*. at 1263 (footnotes omitted).

Similarly here, Plaintiff's claim that Founder's decision to remove Plaintiff from the Alys Beach approved builder list resulted in the loss of business with the Stephens on property outside of Alys Beach is, at best, indirect interference that does not satisfy the test set forth in *Lawler*. Therefore, Plaintiff has failed to state a

sufficient claim for tortious interference in Counts I and II based upon Plaintiff's removal from the Alys Beach approved builder list.

For each of these reasons, the Court should dismiss Counts I and II.

### 5.   Failure to State Claim for Tortious Interference with Alys Beach Lot Owners (Count III)

Count III fails to state a proper legal claim because Founder and Mr. Comer were part of the business relationships with which they supposedly interfered. Plaintiff alleges that Mr. Comer, through his position with Founder, refused to allow Plaintiff to build within Alys Beach.  Founder is the developer of the Alys Beach community, it owns property within that community, and it has the right to determine and enforce the rules that govern the development of the community, including the approval of builders.  Lot owners within Alys Beach cannot use a particular builder without Founder's express approval; therefore, Founder and its agents are part of the business relationship regarding the construction of any home within Alys Beach.

As a matter of law, Founder and Mr. Comer cannot tortiously interfere with Plaintiff's solicitation of construction jobs when Founder and Mr. Comer were necessarily part of the alleged business relationships.  *Palm Beach County Health Care District v. Professional Medical Education, Inc*., 13 So. 3d 1090, 1094 (Fla. 4th DCA 2009) ("Under Florida law, a defendant is not a stranger to a business relationship, and thus cannot be held liable for tortious interference, when it has a

supervisory interest in how the relationship is conducted or a potential financial interest in how a contract is performed"); *Favret*, 2007 WL 1364342, *4 (dismissing claim for tortious interference because the plaintiff could not assert that the defendants were "strangers to the relationship").  As the Eleventh Circuit has explained:

> Under Florida law, a claim for tortious interference with contract cannot lie where the alleged interference is directed at a business relationship to which the defendant is a party. *Genet Co. v. Anheuser-Busch, Inc*., 498 So.2d 683, 684 (Fla. 3d DCA 1986) (citing *Ethyl v. Balter*, 386 So.2d 1220, 1225 (Fla. 3d DCA 1980)). In other words, "the interfering defendant must be a third party, a stranger to the business relationship." *Salit v. Ruden, McClosky, Smith, Schuster & Russell, P.A*., 742 So.2d 381, 386 (Fla. 4th DCA 1999) (citing *Abruzzo v. Haller*, 603 So.2d 1338 (Fla. 1st DCA 1992)).
>
> *Genet,* decided by the Florida Third District Court of Appeal, is materially indistinguishable from the instant case. 498 So.2d at 683-85. In *Genet,* the owner of an Anheuser–Busch (A–B) wholesalership contracted with the plaintiffs to sell his wholesalership. *See id.* at 684. The sales contract between the owner and the plaintiffs was expressly conditioned on A–B's approval. *See id.* Additionally, the equity agreement between A–B and the owner required A–B's approval for any sale of the wholesalership. *See id.* A–B disapproved the sale to the plaintiffs. In affirming a grant of summary judgment to A–B, the Third District Court of Appeal reasoned, "Because plaintiffs' agreement with [the owner] was specifically conditioned upon A–B's approval, as a matter of law, A–B cannot be liable for tortious interference with their agreement." *Id.* Moreover, in support of its holding, the court emphasized that A–B was not a disinterested third-party, as it had a contractual right in the equity agreement to disapprove any proposed transfer. *See id.*
>
> All the material facts from *Genet* are present in this case. Just as the sales agreement in *Genet* was conditioned on A–B's approval, the transfer and relocation agreement here was expressly conditioned on

Appellee's approval. Furthermore, just as the equity agreement in *Genet* gave A–B the power to disapprove a sale, the Dealership Agreement here gave Appellee the power to disapprove a transfer or relocation. Therefore, pursuant to *Genet,* the district court properly granted Appellee summary judgment on Appellants' tortious interference claims.

*Id*. at 1294 (footnotes omitted).[2]

Furthermore, neither of the Defendants can unjustifiably interfere when their alleged actions related to Founder's exercise of its right to control the nature and course of development within Alys Beach.  In approving or disapproving builders who construct homes within the community, Founder is acting to protect its own economic interests.  Therefore, any role Mr. Comer had in the removal of Plaintiff from an approved builder list is privileged as a matter of law in the context of tortious interference.  *Johnson Enterprises of Jacksonville, Inc. v. FPL Grp., Inc.,* 162 F.3d 1290, 1321 (11th Cir. 1998) ("Florida law recognizes the principle that actions taken to safeguard or protect one's financial interest, so long as improper means are not employed, are privileged").

---

[2] To the extent Plaintiff argues that a "sole malice" exception applies, that exception cannot apply to Count III because Plaintiff expressly alleges in paragraph 53 that "[u]pon information and belief, Defendants were motivated, **in part**, by malice toward [Plaintiff] based on criticism of the management of Alys Beach, and by a desire to eliminate competition for building contracts in Alys Beach by [Plaintiff]" (emphasis supplied).  The "malice" exception requires a plaintiff to establish the defendant acted **solely** out of malice.  Here, Plaintiff has not even alleged such sole malice in Count III.  *See Ernie Haire Ford*, 260 F.3d at 1294 n. 9.

Finally, Plaintiff has affirmatively alleged that Founder and Mr. Comer interfered with the supposed business relationships in an effort to compete for business. Second Amended Complaint ¶53 ("Upon information and belief, Defendants were motivated, in part, by malice toward [Plaintiff] based on criticism of management of Alys Beach, and by a **desire to eliminate competition** for building contracts in Alys Beach by [Plaintiff]") (emphasis supplied). Plaintiff's affirmative contention that Founder and Mr. Comer engaged in their alleged actions in an effort to compete for business renders the tortious interference claim subject to dismissal. *International Sales & Service, Inc. v. Austral Insulated Products, Inc.*, 262 F.3d 1152, 1158 (11th Cir. 2001) ("Florida law recognizes the right of competitors to compete for customers"). It makes no difference if, as Plaintiff alleges, the defendants were engaging in competitive behavior while also holding some malice toward Plaintiff. As one Florida appellate court has observed, "it is irrelevant whether the person who takes authorized steps to protect his own interests does so while also harboring some personal malice or ill-will towards the plaintiff…" *Ethyl Corp.,* 386 So. 2d at 1225; *see also Menendez,* 521 So. 2d 178 at 180 (discussing financial interest privilege and stating that "conduct engaged in for legitimate purposes, even if tinged with animosity and malice, does not give rise to a cause of action for interference with a contractual relationship").

For each of these reasons, the Court should dismiss Count III.

6.     **Failure to State Claims for Negligence (Counts V and VI)**

Plaintiff sues Founder and Mr. Comer for negligence claiming that each of them owed a duty of care regarding Plaintiff's business relationships and the administration of the community documents.  For example,

- In Count V, Plaintiff alleges against Mr. Comer: "Comer therefore had a duty of care, among other things, with regard to [Plaintiff] and its business relationships as they could be potentially harmed by Comer's actions with regard to the implementation of the Declaration and administration of the approved builder list."  Second Amended Complaint ¶75.

- In Count VI, Plaintiff alleges against Founder: "EBSCO-GCD had a duty of care, among other things, with regard to [Plaintiff] and its business relationships and implementation of the Declaration."  Second Amended Complaint ¶88.

- Also in Count VI, Plaintiff alleges against Founder: "EBSCO-GCD also had a duty of care to hire, train, and supervise its employees, including Comer, regarding the responsibilities which were assigned to them within Alys Beach."  Second Amended Complaint ¶87.

However, as a matter of law, none of these duties were owed to Plaintiff.

"[T]he determination of whether a duty is owed presents a question of law to be determined by the court."  *Jackson Hewitt, Inc. v. Kaman*, 100 So. 3d 19, 28 (Fla. 2d DCA 2011).   "The duty element of negligence is a threshold legal question; if no legal duty exists, then no action for negligence may lie."  *Jenkins v. W.L. Roberts, Inc.*, 851 So. 2d 781, 783 (Fla. 1st DCA 2003).  The Restatement (Second) of Torts recognizes four sources of a duty: (1) legislative enactments or administration regulations; (2) judicial interpretations of such enactments or

regulations; (3) other judicial precedent; and (4) a duty arising from the general facts of the case.  *See* Restatement (Second) of Torts § 285 (1965); *Aguila v. Hilton, Inc.*, 878 So. 2d 392, 395 n.1 (Fla. 1st DCA 2004), *rev. denied*, 891 So. 2d 549 (Fla. 2004).  Florida law recognizes that a legal duty arises "whenever a human endeavor creates a generalized and foreseeable risk of harming another." *National Title Insurance Company v. Lakeshore I Condominium Association, Inc.*, 691 So. 2d 1104, 1106 (Fla. 3d DCA 1997), citing *McCain v. Florida Power Corp.*, 593 So. 2d 500, 503 (Fla. 1992).  Here, the only possible source of the supposed duties appears to be the general facts of the case.

The general facts alleged by Plaintiff are that it is a home builder that has been precluded by Founder from construction projects within Alys Beach.  Mr. Comer's alleged involvement relates merely to his employment with Founder.  There is no other relationship, special or otherwise, alleged to exist between Plaintiff and Founder or Mr. Comer.  Neither Founder nor Mr. Comer owes fiduciary or other responsibilities to Plaintiff, and there is no basis to conclude that Founder or Mr. Comer owe any duty to Plaintiff regarding its "business relationships."  No such duties exist as a matter of law.  *See, e.g., Becks v. Emery-Richardson, Inc.*, No. 86-6866-CIV, 1990 WL 303548, *26 (S.D. Fla. Dec. 21, 1990) ("In short, plaintiffs fail to cite any statute, common law principle or any other legal authority creating a duty on these defendants to supervise or control

IGBE's operations for their benefit or protection.  Absent such a duty, an action for negligence will not lie."); *Robertson v. Deak Perera (Miami), Inc.,* 396 So. 2d 749, 750 (Fla. 3rd DCA 1981) (explaining that negligence claims "must be based upon a legal obligation for the benefit of another" and "[n]egligence in the air, so to speak, will not do") (citing Pollock, Law of Torts 468 (13th ed. 1920)); *Silver v. Countrywide Home Loans, Inc*., 760 F.Supp.2d 1330, 1339-40 (rejecting plaintiff's claim regarding alleged negligence by a bank to properly process loan documents because "there is no tort duty to process loans competently").

If such negligence duties existed in the general business environment, then businesses could sue for just about anything that resulted in some economic disappointment, such as general mismanagement of business matters by suppliers or customers.  For example, if Founder was negligent in the management of the Alys Beach community to the extent that it failed financially, would Founder have exposure to negligence claims by this Plaintiff and other home builders for lost profits?  Of course not.  Such claims are not allowed because Founder does not owe negligence duties to members of the business community who hope to profit from the success of the residential development.  *See Virgilio v. Ryland Group, Inc*., 680 F.3d 1329, 1339 (11th Cir. 2012) (rejecting plaintiff's "zone of risk" arguments in the context of a commercial relationship and stating that "[w]here the

plaintiff seeks only the recovery of an economic loss, the duty element of negligence law serves as an important barrier to over-extension of liability").

For each of these reasons, the Court should dismiss Counts V and VI.

### 7.    Contract Claim is Barred by Statute of Frauds (Count IV)

The Court should dismiss the breach of contract claim in Count IV because it violates Florida's Statute of Frauds.  *See* Florida Statutes §725.01 (barring, in relevant part, verbal agreements "upon any agreement that is not to be performed within the space of 1 year from the making thereof").  Although the statute of frauds is typically an affirmative defense, dismissal is appropriate when the defense appears on the face of the complaint.  *White v. Padgett*, 475 F.2d 79, 82 (5th Cir. 1973) ("However, the complaint is subject to dismissal under [Rule 12(b)(6)], for failure to state a claim upon which relief can be granted when the affirmative defense clearly appears on the face of the complaint").  Here, the defense clearly appears on the face of the Second Amended Complaint because, in paragraph 60, Plaintiff alleges a contract for establishing an ongoing business relationship that would continue perpetually.  *See LynkUs Communications, Inc. v. WebMD Corp.*, 965 So. 2d 1161, 1165-66 (Fla. 2d DCA 2007) (holding that an alleged verbal agreement that called for an ongoing business relationship was barred by the statute of frauds).  The doctrine of partial performance cannot apply here because Plaintiff seeks damages.  *Id*. at 1166 ("Furthermore, the doctrine of

part performance does not apply to actions for the recovery of damages for alleged breach of an oral contract within the operation of the statute of frauds") (internal quotations omitted). To the extent Plaintiff wants to contend that the doctrine of partial performance applies because it seeks equitable relief, that argument is incorrect because Plaintiff's purported claims for equitable relief fail as of matter of law for the reasons expressed in Section III(B)(3), above. For these reasons, the Court should dismiss Count IV.

### 8. Failure to State Claim for Quantum Meruit (Count VII)

Florida law prescribes four elements for quantum meruit claims. *See Commerce P'ship 8098 Ltd. P'ship v. Equity Contracting Co., Inc.,* 695 So. 2d 383, 386 (Fla. 4th DCA 1997) (en banc); *see also Babineau v. Fed. Express Corp.,* 576 F.3d 1183, 1194 (11th Cir. 2009) (reciting the elements of quantum meruit under Florida law). First, the plaintiff must confer "a benefit on the defendant." *Commerce,* 695 So. 2d at 386. Second, the defendant must have "knowledge of the benefit." *Id.* Third, the defendant must have "accepted or retained the benefit conferred." *Id.* Fourth, the circumstances must be such that "it would be inequitable for the defendant to retain the benefit without paying fair value for it." *Id.* Fundamentally, a claim for quantum meruit is based upon quasi contract, which means the claim cannot be based upon an express contract. *Harden v. TRW, Inc.,* 959 F.2d 201, 204 (11th Cir. 1992) ("An express contract precludes recovery

on a quantum meruit theory").

Here, plaintiff alleges in paragraphs 96 through 99 of the Second Amended Complaint that Founder made certain representations to Plaintiff regarding approval to build in Alys Beach, to which Plaintiff supposedly agreed and acted upon.   Second Amended Complaint ¶¶96-99.   Additionally, in paragraph 101, Plaintiff alleges that Founder "breached its obligations" by engaging in assorted conduct, which is the same conduct that forms the basis for Founder's alleged breach of contract in paragraph 63.  Second Amended Complaint ¶¶63, 101.  These facts and circumstances, which describe the same supposed contract that Plaintiff is suing upon in Count IV, describe an alleged express agreement.   Therefore, Plaintiff has failed to assert a claim for quantum meruit and Count VII should be dismissed.  Furthermore, the alleged express agreement described in Count VII is barred for the same reasons as Count IV, discussed above.  If the Court construes the quantum meruit claim as one for promissory estoppel, the claim is barred for the reasons discussed immediately below.

Additionally, Count VII should be dismissed because it improperly seeks lost future profits and other consequential damages related to construction projects with lot owners.  Second Amended Complaint ¶103.  Even assuming that Plaintiff has asserted a proper claim for quantum meruit, recovery on such a claim is limited to the reasonable value of the labor performed and market value of the materials

supposedly provided **to Founder**, not labor and materials provided to some lot owner for some future construction project, and certainly not lost profits on future construction projects.  *See Robinson v. Albanese*, 636 So. 2d 831, 834 (Fla. 5th DCA 1994) ("In a case such as this where damages are sought for a contract which has not been fully performed, the contractor can recover *either* in *quantum meruit* (reasonable value of the labor performed and market value of materials) *or* in contract (lost profit, plus the reasonable cost of labor and material expended in partial performance))" (emphasis original; footnote omitted).  Thus, the suggestion in Count VII that Plaintiff could seek lost profits or other consequential damages for lost future projects runs entirely contrary to quantum meruit jurisprudence.

For these reasons, the Court should dismiss Count VII.

**9.     Failure to State Claim for Promissory Estoppel (Count VIII)**

To state a cause of action for promissory estoppel, a plaintiff must allege that (1) the plaintiff detrimentally relied on a promise made by the defendant; (2) the defendant reasonably should have expected the promise to induce reliance in the form of action or forbearance on the part of the plaintiff or a third person; and (3) that injustice can be avoided only by enforcement of the promise against the defendant.  *W.R. Townsend Contracting Inc. v. Jensen Civil Const., Inc.,* 728 So. 2d 297, 302 (1999); *Hopkins Pontiac GMC, Inc. v. Ally Financial Inc.,* 60 F.Supp.3d 1252, 1261 (N.D. Fla. 2014).  The alleged promise must be definite.  *Id.*

at 1261-62 (dismissing promissory estoppel claim for lack of specificity).   Here,

Plaintiff has not specified when the alleged promises were made or the duration of

the allegedly promised business relationship.   Therefore, the claim is not definite.

Furthermore, promissory estoppel claims that are the equivalent of claims

sounding in fraud are subject to the heightened pleadings standard of Rule 9(b).

*See Peacock Medical Lab, LLC v. Unitedhealth Group, Inc*., 2015 WL 5118122 *4

(S.D. Fla. Sept. 1, 2015) (applying Rule 9(b) to promissory estoppel claim);

*Cincinnati Life Ins. Co. v. Beyer*, 722 F.3d 939, 949-50 (7th Cir. 2013) (same).

Here, Plaintiff alleges that "[a]s a result of EBSCO-GCD's **misrepresentation**,

[Plaintiff] has suffered significant damages, including loss of investment and

income in Alys Beach and lost future profits."   Second Amended Complaint ¶114

(emphasis supplied).   Because Plaintiff has asserted misrepresentation as the basis

for its promissory estoppel claim, Plaintiff is required to plead the specifics, which

requires: "(1) precisely what statements or omissions were made in which

documents or oral representations; (2) the time and place of each such statement

and the person responsible for making (or, in the case of omissions, not making)

them; (3) the content of such statements and the manner in which they misled the

plaintiff; and (4) what the defendant obtained as a consequence of the fraud."

*Peacock Medical*, 2015 WL 5118122 *4, citing *McGee v. JP Morgan Chase Bank,*

*NA*, 520 Fed.Appx. 829, 831 (11th Cir. 2013).   Plaintiff has not alleged these specifics, therefore Count VIII should be dismissed.

Additionally, promissory estoppel cannot be used to circumvent the statute of frauds.  *City of Orlando v. W. Orange Country Club, Inc.,* 9 So. 3d 1268, 1269 (Fla. 5th DCA 2009).   For the reasons expressed, above, in Section III(B)(7) regarding Plaintiff's breach of contract claim, Plaintiff's promissory estoppel claim should be dismissed for violating the statute of frauds.   *See* Fla. Stat. § 725.01; *Shore Holdings, Inc. v. Seagate Beach Quarters, Inc.*, 842 So. 2d 1010, 1013 (2003) (holding that promissory estoppel claim based upon oral representation was barred by the statute of frauds).

For each of these reasons, the Court should dismiss Count VIII.

## IV.   CONCLUSION

Based upon the foregoing, Mr. Comer respectfully requests that this Court dismiss the Second Amended Complaint pursuant to Rule 12(b)(5) and quash service because Mr. Comer was improperly served outside the 120-day requirement, and Founder and Mr. Comer request that the Court dismiss the Second Amended Complaint under Rule 12(b)(6) for failure to state a claim upon which relief can be granted.

## Local Rule 7.1(F) Certificate

Pursuant to Local Rule 7.1(F), the instant Motion contains 7,956 words.

/s/ Matthew J. Meyer
Matthew J. Meyer
Florida Bar No. 116653
matthew.meyer@ansalaw.com
Tyler J. Derr
Florida Bar No. 96639
tyler.derr@ansalaw.com
**ANSA ASSUNCAO, LLP**
100 South Ashley Drive, Suite 1740
Tampa, Florida  33602
813-221-5206 (phone)
813-221-6206 (fax)
*Attorneys for Defendants EBSCO Gulf Coast Development, Inc. and Jason Comer*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the above and foregoing has been furnished via email to ROBERT A. GOODWIN, III, ESQ. at tgoodwin@kaglawfirm and mbaughn@kaglawfirm, Keefe, Anchors & Gordon, PA, 2113 Lewis Turner Boulevard, Suite 100, Fort Walton Beach, Florida 32547, *attorneys for Plaintiffs,* and ROBERT C. PALMER, III, ESQ. at bpalmer@wpslawyers, Wade, Palmer, and Shoemaker, PA, 15 North Palafox Street, Pensacola, Florida 32502, *additional counsel for Defendants EBSCO Gulf Coast Development, Inc. and Jason Comer,* on this 29th day of April, 2016.

/s/ Matthew J. Meyer
Attorney